**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOEL ROSENFELD, derivatively on behalf of EDGIO, INC., <br><br> Plaintiff, <br><br> vs. <br><br> WALTER D. AMARAL, DOUG BEWSHER, SCOTT A. GENEREUX, PATRICIA PARRA HADDEN, DIANNE LEDINGHAM, ROBERT LYONS, DAVID C. PETERSCHMIDT, REED B. RAYMAN, and E-FEI WANG, <br><br> Defendants, <br><br> and <br><br> EDGIO, INC., <br><br> Nominal Defendant. | No. <br><br><br> **DEMAND FOR JURY TRIAL** |

**VERIFIED STOCKHOLDER DERIVATIVE**
**COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

Plaintiff, Joel Rosenfeld, by his undersigned attorneys, brings this stockholder derivative action on behalf of nominal defendant Edgio, Inc. f/k/a Limelight Networks, Inc. ("Edgio" or the "Company") against the members of the Company's Board of Directors for their breaches of fiduciary duties, violations of the federal securities laws, and other misconduct that resulted in material damage to the Company and its stockholders. These allegations are made upon personal knowledge with respect to Plaintiff and, as to all other matters, upon information and belief based upon the investigation and analysis by Plaintiff's counsel, including, among other things, a review of the Company's press releases and public filings with the United States Securities and Exchange Commission ("SEC"), corporate governance documents published on the Company's website, transcripts of Edgio conference calls with financial analysts and investors, news reports, financial analyst reports, and other publicly available information about the Company. Plaintiff

believes that substantial additional evidentiary support will exist for the allegations after a reasonable opportunity for discovery.

## I.      NATURE OF THE ACTION

1.      This is a stockholder derivative action brought against the members of the Edgio Board of Directors (the "Board") for their violations of fiduciary duties and other misconduct, which resulted in substantial damage to the Company and its stockholders.

2.      Edgio is a software solutions provider for digital content delivery, online video delivery, cloud security, edge computing, cloud storage, and professional services.

3.      On March 13, 2023, Edgio issued a press release announcing that it will restate its previously issued financial statements for the years ended December 31, 2021 and 2020, as well as the quarterly reports for fiscal 2022 and 2021, because it "identified an error in the Company's historic accounting treatment of Edgio's Open Edge solution." The Company anticipated the restatement would result in a "reduction to revenue of up to approximately $23.0 million for the nine-month period ended September 30, 2022, up to approximately $16.7 million for the twelve-month period ended December 31, 2021, and up to approximately $6.6 million for the twelve-month period ended December 31, 2020." Representing a 5.8% reduction in reported revenue for the nine-month period ended September 30, 2022, a 7.7% reduction in reported revenue for the twelve-month period ended December 31, 2021, and up to a 2.9% reduction in reported revenue for the twelve-month period ended December 31, 2020. As a result, the Company stated that it would be unable to file with the SEC its Annual Report on Form 10-K in a timely manner.

4.      The restatement was necessitated by the Company's, its directors' and officers' improper accounting for customer transactions regarding the Company's Open Edge equipment,

which were accounted for as sales, though they should have been accounted for as financing leases. The Company admitted that there were material weaknesses in internal controls over financial reporting related to Open Edge transactions and that, as a result, the Company's revenue was overstated during these periods, and statements about the Company's financial condition and business prospects prior were materially false and misleading when made and should no longer be relied upon.

5.      In the wake of the news, the Company's stock dropped approximately 15% in one day.  Following the precipitous decline in the Company's stock price, two securities class action lawsuits were filed by aggrieved investors against the Company, and certain of its directors and officers (the "Securities Class Action"). As such, the Company is now subject to substantial liability and will be forced to expend substantial sums to defend itself and its officers, as well as to potentially resolve the matter.

6.      As a result of the Individual Defendants' breaches of fiduciary duty and other misconduct, Edgio has sustained substantial damages and irreparable injury to its reputation. Through this action, Plaintiff seeks to recover for the Company its damages and remediate the internal control weaknesses that plague Edgio.

7.      Plaintiff did not make a demand prior to bringing this action because it would be futile. The Company's directors are neither disinterested nor independent. In the absence of this action, Edgio will neither recover its damages nor properly remediate the weaknesses in its internal controls and corporate governance practices and procedures.

## II.      JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 14(a) of the Securities Exchange Act of

1934 (the "Exchange Act"), SEC Rule 14a-9 (17 C.F.R. § 240.14a-9) promulgated thereunder, and under Section 21D of the Exchange Act. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

9.      This Court has personal jurisdiction over each of the Defendants because each Defendant is either a corporation conducting business in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     This action was not brought collusively to confer jurisdiction on a court of the United States that it would not otherwise have.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because Plaintiff resides in this District; and the Individual Defendants have received substantial compensation in the District by doing business and engaging in activities having an effect in the District.

## III.    PARTIES

### A.    Plaintiff

12.     Plaintiff, Joel Rosenfeld, has held 5,350 Edgio shares since October 2020.  As such, Plaintiff was a shareholder at the time of the transactions complained of herein.

### B.    Defendants

#### 1.    Nominal Defendant Edgio, Inc.

13.     Nominal defendant Edgio is a company duly incorporated under the laws of the State of Delaware.  Its principal executive offices are located at 11811 North Tatum Boulevard, Suite 3031, Phoenix, Arizona 85028.  Edgio's goal is to enable clients to increase revenue

generation and reduce costs in the development and delivery of their digital services.  Edgio's common stock trades on the Nasdaq Global Select Market under the symbol "EGIO."

### 2.    Individual Defendants

#### a.    Defendant Amaral

14.    Defendant Walter D. Amaral ("Amaral") has been a Class I director of Edgio since 2007 and was Chairman of the Board from 2013 through March 2021, is Chair of the Audit Committee, and a member of the Compensation Committee and Nominating and Governance Committee. As of March 31, 2023, Amaral beneficially owned 301,259 shares of Edgio's common stock.

15.    Over the last three years, Edgio paid Amaral the following compensation:

| Fiscal Year | (Salary) Fees Earned or Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2022 | $69,000 | $113,490 | $182,490 |
| 2021 | $73,500 | $143,698 | $217,198 |
| 2020 | $96,000 | $127,118 | $223,118 |

#### b.    Defendant Bewsher

16.    Defendant Doug Bewsher ("Bewsher") has served as a Class II director of Edgio since 2017. As of March 31, 2023, Bewsher owned 127,458 shares of Edgio's common stock.

17.    Over the last three years, Edgio paid Bewsher the following compensation:

| Fiscal Year | Fees Earned or Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2022 | $42,250 | $113,490 | $155,740 |
| 2021 | $40,000 | $143,698 | $183,698 |
| 2020 | $40,000 | $127,118 | $167,118 |

#### c.    Defendant Genereux

18.    Defendant Scott A. Genereux ("Genereux") has served as a Class I Edgio director since 2017. Since August 2022, he is Chair of the Company's Nominating and Governance Committee, and a member of the Compensation Committee, having served as Chair of the latter

until August 2022. As of March 31, 2023, Genereux beneficially owned 143,305 shares of Edgio's common stock.

19.     Over the last three years, Edgio paid Genereux the following compensation:

| Fiscal Year | Fees Earned or Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2022 | $54,500 | $113,490 | $167,990 |
| 2021 | $47,000 | $143,698 | $190,698 |
| 2020 | $46,000 | $127,118 | $167,118 |

**d.      Defendant Hadden**

20.     Defendant Patricia Parra Hadden ("Hadden") has been a Class I Edgio director since 2018 and is a member of the Nominating and Governance Committee.  As of March 31, 2023, Hadden beneficially owned 87,773 shares of Edgio's common stock.

21.     Over the last three years, Edgio paid Hadden the following compensation:

| Fiscal Year | Fees Earned or Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2022 | $42,250 | 113,490 | $155,740 |
| 2021 | $40,000 | $143,698 | $183,698 |
| 2020 | $40,000 | $127,118 | $167,118 |

**e.      Defendant Ledingham**

22.     Defendant Dianne Ledingham ("Ledingham") is a Class II Edgio director since June 2022, serving as Chair of its Compensation Committee since August 2022, and as a member of the Audit Committee and Nominating and Governance Committee.

23.     Edgio paid Ledingham the following compensation:

| Fiscal Year | Fees Earned or Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2022 | $34,125 | $267,225 | $301,350 |

**f.      Defendant Lyons**

24.     Defendant Bob Lyons is a Class III Edgio director, and the Company's President and CEO since February 2021. As of March 31, 2023, Lyons owns 993,895 shares of Edgio common stock.

25.     Over the last two years, Edgio paid Lyons the following compensation:

| Fiscal Year | (Salary) Fees Earned or Paid in Cash | Bonus | Stock Awards | Option Awards | Non-Equity Incentive Plan Compen-sation | Other Comp-ensation | Total |
|---|---|---|---|---|---|---|---|
| 2022 | $550,000 | $504,167 | $2,603,355 | -- | $550,000 | $29,135 | $3,686,657 |
| 2021 | $504,167 | $225,000 | $1,401,250 | $1,179,720 | -- | $15,824 | $3,325,961 |

### g.     Defendant Peterschmidt

26.     Defendant David C. Peterschmidt ("Peterschmidt") is a Class III Edgio director since 2007, Chairman of the Board since April 2021, and is a member of the Audit Committee and Compensation Committee. As of March 31, 2023, Peterschmidt beneficially owned 128,259 shares of Edgio's common stock.

27.     Over the last three years, Edgio paid Peterschmidt the following compensation:

| Fiscal Year | (Salary) Fees Earned or Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2022 | $89,000 | $113,490 | $202,490 |
| 2021 | $78,250 | $143,698 | $221,948 |
| 2020 | $59,000 | $127,118 | $186,118 |

### h.     Defendant Rayman

28.     Defendant Reed B. Rayman ("Rayman") is a Class III Edgio director since June 2022.

29.     Edgio paid Rayman the following compensation[1]:

| | (Salary) | | |
|---|---|---|---|

---

[1] This compensation is not paid directly to Rayman, but is instead paid to College Top Holdings, Inc. ("College Top"), a direct, wholly owned subsidiary of College Parent, L.P., a Delaware limited partnership (together with its related affiliates, "College Parent"). Https://www.sec.gov/Archives/edgar/data/1449433/000110465923005400/tm233854d1_ sc13d.htm at 14.

| Fiscal Year | Fees Earned or Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2022 | $22,250 | - | $22,250 |

### i.      Defendant Wang

30.     Defendant E-Fei Wang ("Wang") is a Class II Edgio director since June 2022 and is a member of the Nominating and Governance Committee.

31.     Edgio paid Wang the following compensation[2]:

| Fiscal Year | (Salary) Fees Earned or Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2022 | $22,250 | -- | $22,250 |

## IV.     THE INDIVIDUAL DEFENDANTS' DUTIES

32.     By reason of their positions as officers or directors of Edgio and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed and owe Edgio and its shareholders, fiduciary obligations of loyalty, good faith, due care, and candor, and were and are required to use their utmost ability to control, manage, and oversee Edgio in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Edgio and its shareholders to benefit all shareholders equally and not in furtherance of their own personal interests or benefit.

33.     The Individual Defendants, because of their positions of control and authority as directors and officers of Edgio, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

34.     As senior executive officers and directors of a publicly traded company whose common stock was registered with the SEC and traded on NASDAQ, the Individual Defendants also owed a duty to ensure the dissemination of accurate, complete, and truthful information concerning Edgio's financial condition, operations, products, internal controls, and business

---

[2] This compensation is not paid directly to Wang but is instead paid to College Top.

prospects. In addition, the Individual Defendants had a duty to cause the Company to disclose in its regulatory filings with the SEC all material facts so that the market price of the Company's shares would be based upon accurate information. In order to meet these duties, the Individual Defendants were required to exercise reasonable control and supervision over Edgio's management, policies, and internal controls.

35.     At all times relevant hereto, the Individual Defendants were the agents of each other and Edgio and were always acting within the course and scope of such agency.

36.     The Individual Defendants were and are also subject to particularized duties pursuant to specific policies in effect at Edgio.

**A.  Additional Duties Under The Code Of Ethics And Business Conduct**

37.     The Company's Code of Ethics and Business Conduct ("Code of Ethics") is "designed to promote a responsible and ethical work environment for all employees and members of the Board of Directors of Edgio and its subsidiaries." The Code of Ethics "applies to all Edgio employees and members of the Edgio Board, as well as consultants and agents doing business on behalf of Edgio."

38.     The Code of Ethics requires that Edgio personnel comply with all relevant laws and policies:

> In performing your duties for Edgio, you are responsible for abiding by Edgio policies and all local and national laws in all countries in which Edgio does business. You are also obligated to comply with all other applicable laws, rules and regulations of any regulatory organization, licensing agency or professional association governing your professional activities. You are responsible for knowing and following the laws and policies that relate to your duties, including the policies in the Code and all other Edgio policies.

39.     The Code of Ethics requires that all directors, officers, and employees:

a)     avoid any actions that create, or appear to create, conflicts of interest with Edgio. A "conflict of interest" may occur when an individual's own interests (including the interest of a family member or an organization with which an

individual has a significant relationship) interfere, or appear to interfere, with the interests of Edgio;

b)      avoid even the appearance of impropriety in making business decisions;

c)      make business decisions with honesty and integrity, based on objective factors such as cost, quality, value, service, and the ability to carry through on commitments;

d)      not use their positions at Edgio for personal gain. Generally, it is not permissible to conduct business with an employee or director of Edgio or an Edgio employee's or director's spouse, relatives, or friends if the employee's role allows him or her to influence purchasing decisions for the employee, facility, or region where he or she works; and

e)      Employees and directors may not take for themselves opportunities related to the business of Edgio or opportunities that they discover through their positions with Edgio or through the use of Edgio property or information.

40.     The Code of Ethics obligates directors, officers, and employees to comply with

the Company's Insider Trading Policy and to avoid unfair dealing:

a)      The use of material, non-public information by employees for their own financial benefit or that of a spouse, relative or friend is against Edgio policy and against the law. It is a serious violation of securities laws to buy or sell Edgio stock (or securities of another company to which the information applies) while in possession of material, non-public information. It is also illegal to give the information to others who can reasonably be expected to use the information to trade any stock. The law imposes severe criminal and civil penalties and fines for individuals who violate this law. Please refer to the Edgio Insider Trading Policy or call the Legal Team with any questions.

b)      Employees and directors should always deal fairly with Edgio's customers, suppliers, vendors, competitors, and employees. No one should take unfair advantage of another through manipulation, concealment, abuse of confidential information, falsification, misrepresentation of material facts or any other practice involving intentional unfair dealing.

41.     The Code of Ethics also mandates the maintenance of accurate records and

financial reporting:

Almost every employee at Edgio records and/or reports some type of data. All such record keeping and reporting must be handled with the utmost integrity - accurate, honest, and complete and must not be organized in a way intended to mislead or misinform the reader. Whether the reported information is sales results,

hours worked or some other company or customer information, it must be accurate and timely and be a fair representation of all the facts. Some forms of inaccurate record keeping and reporting are illegal. Listing a fabricated expense on an expense account report or petty cash record is, for example, illegal. Misreporting time worked on a contract is also illegal.

Edgio's goal for record keeping and reporting is to have this process be 100% accurate, above-board and in compliance with all company policies and procedures and government legislation, including The Sarbanes-Oxley Act. All employees are expected to participate in achieving this goal. Any employee who is requested to make, authorize, or agree to any offer or payment which is, or may be, contrary to this policy will promptly report such information to the employee's manager, the manager in the area having responsibility for financial activity, or the Legal Team. Also, if an employee acquires information (for example, newspaper reports, reports from customers, or statements of individuals involved) that gives them reason to believe that any employee is engaged in conduct forbidden by this policy, or that any sales representative, distributor, or other person or record representing Edgio in any transaction is engaged in the type of conduct (whether or not in connection with a transaction involving Edgio or its products) which, if engaged in by an employee of Edgio, would violate this policy, they will promptly report such information to the employee's manager, to the manager in the area having responsibility for financial activity, or to the Legal Team.

42.     Those found to violate the Code of Ethics and could face disciplinary action, up to and including termination from the Company.

**B.     Additional Duties Under The Corporate Governance Guidelines**

43.     The Board members have additional duties outlined in the Company's Corporate Governance Guidelines, including the requirement that its members act in the best interests of the Company:

The fundamental role of the directors is to exercise their business judgment to act in what they reasonably believe to be the best interests of Edgio, Inc. (the "Company") and its stockholders. It is the duty of the Board to oversee the Chief Executive Officer and other senior management in the competent and ethical operation of the Company.

**C.     Additional Duties Of The Members Of The Audit Committee**

44. The Corporate Governance Guidelines specifically task the Audit Committee with specific responsibilities regarding accounting and financial reporting systems and the internal controls relating thereto:

> The Audit Committee of the Board ensures the integrity of the Company's accounting and financial reporting systems, including the audit of the Company's annual financial statements by the independent auditors, and that appropriate systems of control are in place. The Audit Committee reports to the Board on a regular basis and the Board, upon the recommendation of the Audit Committee, takes such actions as are necessary to ensure the integrity of the Company's accounting and financial reporting systems and that appropriate controls are in place.

45. The Corporate Governance Guidelines mandate that the Audit Committee members take all necessary action to ensure the integrity of the Company's accounting and financial reporting systems and that appropriate controls are in place:

> The Audit Committee of the Board ensures the integrity of the Company's accounting and financial reporting systems, including the audit of the Company's annual financial statements by the independent auditors, and that appropriate systems of control are in place. The Audit Committee reports to the Board on a regular basis and the Board, upon the recommendation of the Audit Committee, takes such actions as are necessary to ensure the integrity of the Company's accounting and financial reporting systems and that appropriate controls are in place.

46. The members of the Company's Audit Committee have additional duties outlined in the Audit Committee Charter, including requirements that its members:

- Oversee the accounting and financial reporting processes of the Company and audits of the financial statements of the Company;

- Assist the Board in oversight and monitoring of (i) the integrity of the Company's financial statements, (ii) the Company's compliance with legal and regulatory requirements, (iii) the independent auditor's qualifications, independence and performance, (iv) the Company's internal accounting and financial controls, and (v) the business practices and ethical standards of the Company;

- Prepare the report required by the rules of the SEC to be included in the Company's annual proxy statement;

- Provide the Board with the results of its monitoring and recommendations derived therefrom;

- Provide to the Board such additional information and materials as it may deem necessary to make the Board aware of significant financial matters that require the attention of the Board;

- Reviewing on a continuing basis the adequacy of the Company's system of internal controls, including meeting periodically with the Company's management and the independent auditors to review the adequacy of such controls and to review before release the disclosure regarding such system of internal controls required under SEC rules to be contained in the Company's periodic filings and the attestations or reports by the independent auditors relating to such disclosure;

- Reviewing and providing guidance with respect to the external audit and the Company's relationship with its independent auditors by (i) reviewing the independent auditors' proposed audit scope, approach and independence; (ii) obtaining on a periodic basis a statement from the independent auditors regarding relationships and services with the Company which may impact independence and presenting this statement to the Board, and to the extent there are relationships, monitoring and investigating them; (iii) reviewing the independent auditors' peer review conducted every three years; (iv) discussing with the independent auditors the financial statements and audit findings, including any significant adjustments, management judgments and accounting estimates, significant new accounting policies and disagreements with management and any other matters described in SAS No. 61, as may be modified or supplemented; and (v) reviewing reports submitted to the audit committee by the independent auditors in accordance with the applicable SEC requirements;

- Reviewing and discussing with management and the independent auditors the annual audited and quarterly unaudited financial statements, including major issues regarding accounting, disclosure and auditing procedures and practices as well as the adequacy of internal controls that could materially affect the Company's financial statements. In addition, the review shall include the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," prior to filing the Company's Annual Report on Form 10-K and Quarterly Reports on Form 10-Q, respectively, with the SEC;

- Directing the Company's independent auditors to review before filing with the SEC the Company's interim financial statements included in Quarterly Reports on Form 10-Q, using professional standards and procedures for conducting such reviews;

- Reviewing before release the unaudited quarterly operating results in the Company's quarterly earnings release;

- Recommending to the Board that the financial statements be included in the Company's Annual Report on Form 10-K, based on its annual review;

- Reviewing, approving and monitoring the Company's code of ethics for its senior financial officers;

- Overseeing and reviewing the Company's policies regarding information technology and management information systems as they relate to internal control and financial reporting;

- If necessary, instituting special investigations with full access to all books, records, facilities and personnel of the Company;

- As appropriate, obtaining advice and assistance from outside legal, accounting or other advisors; and

- Providing a report in the Company's proxy statement in accordance with the rules and regulations of the SEC and review the matters described in such report.

**D.  Additional Duties Of The Members Of The Nominating And Governance Committee**

47.    The members of the Company's Nominating and Governance Committee have additional duties outlined in the Charter for the Nominating and Governance Committee, including requirements that its members:

- Focus on issues relating to the composition and operation of the Board.

- Assist the Board in the areas of membership selection, committee selection and rotation practices.

- Evaluate the overall effectiveness of the Board.

- Review issues and developments relating to corporate governance issues and formulate and recommend corporate governance standards to the Board.

- Monitor and review with management enterprise risk and policies including those related to operations, information, data and cyber security.

- Ensure that the Board is properly constituted to meet its fiduciary obligations to the Company's stockholders and the Company and that the Company has and follows appropriate corporate governance standards.

- Review and assess this Charter and the Corporate Governance Guidelines and recommend any proposed changes to the Board for approval.

**E.  Additional Duties Of The Members Of The Compensation Committee**

48.     The members of the Company's Compensation Committee have additional duties outlined in the Charter for the Compensation Committee, including requirements that its members review and monitor the potential risk to the Company from its compensation programs and policies and whether such programs or policies incentivize or encourage unnecessary and excessive risk taking.

## V.     SUBSTANTIVE ALLEGATIONS

### A.     Background

49.     Edgio provides network service for delivery of digital media content and software. Edgio's services include digital content delivery, online video delivery, cloud security, edge computing, cloud storage, and professional services.

50.     Edgio was formed by Limelight Networks, Inc.'s acquisition of Edgecast Inc. (a business unit of Yahoo! Inc. ("Yahoo")) ("Edgecast") and certain Edgecast-related businesses and assets from College Parent, L.P.

51.     At the June 15, 2022 closing of the Edgecast purchase, the Company and College Parent entered into a stockholders' agreement providing for the Board to be expanded from eight to nine directors, with three new College Parent appointees joining the Board, Rayman and Wang immediately, and two prior Limelight directors resigning. Limelight purchased all of Edgecast's issued and outstanding common stock as well as certain related businesses and assets for 71.9 million Limelight common shares worth approximately $300 million and an earnout tied to the post-closing entity's stock price, pursuant to which College Parent could receive up to an additional 12.7 million Edgio shares worth approximately $100 million.

52.     As a result, College Parent holds approximately 37% of Edgio's stock and is a controlling shareholder of the Company with two of its nominees, Rayman and Wang, serving as Edgio directors.

**B.     Edgio Issues Materially False And Misleading Financial Information**

53.     On February 11, 2021, the Company filed with the SEC a Current Report on Form 8-K attaching a press release issued on that date announcing "Fourth-quarter and Full-year 2020 Results." This was the first earnings report since Lyons became CEO. In the press release, the Company represented that it had revenue in the quarter of $55.4 million, compared to $60.1 million in the fourth quarter of 2019; GAAP net loss of $8.3 million, or $(0.07) per basic share versus net income of $2.5 million or $0.02 per basic share in the prior year period, inclusive of $2.2 million of interest expense related to Limelight's senior convertible notes issued during the 2020 third quarter; Non-GAAP net loss of $3.8 million or $(0.03) per basic share versus non-GAAP net income of $5.8 million, or $0.05 per basic share in the prior year period, exclusive of $1.0 million of interest expense related to the Company's convertible notes issued during the 2020 third quarter; and adjusted EBITDA of $3.6 million versus $11.4 million in the prior year period. Regarding the fourth quarter results, Lyons remarked:

> Our immediate focus is the challenges we faced in the fourth quarter, specifically top-line growth and the resulting pressure on margins. Quite frankly, performance in these areas is not where it should be. I believe in our ability to close the gaps and position Limelight as a leader delivering edge-based solutions. While there is no doubt much has been accomplished, I know that our best days are ahead of us. I am confident in the direction we are headed, in our ability to better execute on a refined strategy and pursue rule-of-40 performance.

54.     For the Company's full year 2020 results, Edgio reported "Record annual revenue of $230.2 million increases 15% from 2019"; 2020 GAAP net loss of $19.3 million, or $(0.16) per basic share, versus $(16.0) million, or $(0.14) per basic share, in 2019, inclusive of $3.8

million of interest expense related to Limelight's senior convertible notes issued during the 2020 third quarter; and adjusted EBITDA of $24.5 million, rising 35% from $18.1 million in 2019.

55.     The Company informed the market that no future financial guidance would be provided in light of the "new leadership and active efforts underway to evaluate all aspects of the business strategy and cost structure, the focus is on immediate and long-term steps to position the company as a leader delivering edge-based solutions. Additional details will be provided as the company formalizes these plans." Lyons commented further: "[We] delivered a successful year on multiple fronts – but we have work to do. Our industry is on an upward trajectory – and we enter 2021 laser-focused on building a platform for profitable growth."

56.     On February 12, 2021, the Company filed with the SEC its Annual Report on Form 10-K for the year ended December 31, 2020, signed by Defendants Amaral, Bewsher, Genereux, Hadden, Lyons, and Peterschmidt, among others, affirming the previously reported financial results and representing further that the Company's "disclosure controls and procedures were effective as of December 31, 2020." A certification pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Lyons attested to the accuracy of the financial statements and the effectiveness of the Company's internal control over financial reporting.

57.     On April 29, 2021, the Company filed with the SEC a Current Report on Form 8-K attaching a press release issued on that date announcing first quarter 2021 results and issuing guidance for the full year 2021. In the press release, the Company represented that it had revenue of $51.2 million, down 10 percent, compared to $57.0 million in the first quarter of 2020; GAAP net loss of $25.5 million, or a loss of $0.21 per basic share, compared to a net loss of $5.3 million, or $(0.04) per basic share in the first quarter of 2020, inclusive of $11.7 million in restructuring and transition related charges; Non-GAAP net loss was $11.0 million or $(0.09) per basic share,

compared to a non-GAAP net loss of $0.2 million, or break-even per basic share in the first quarter of 2020; EBITDA was $(17.6) million, compared to $0.5 million for the first quarter of 2020; and adjusted EBITDA was $(3.3) million, compared to $5.6 million for the first quarter of 2020.

58.     Edgio projected full year revenue in the range of $220 million to $230 million, lower than the prior year's revenue. Putting a positive spin on the reported results, Lyons stated:

> As anticipated, our first quarter was challenging from a top- and bottom-line perspective. That said, I am confident that we are now on the right path to achieve success. . . . Our three-pillared strategy of improve the core, expand the core and extend the core is serving as our playbook to transform the company and improve execution, profitability and accelerate growth.

> We have made measurable progress addressing our short-term headwinds and our broader transformation efforts during the quarter. In just a couple of months we[]: simplified our operating mode; improved network performance; meaningfully reduced our operating costs; and demonstrated notable improvements in our client SLA's.

> Additionally, we continue to be excited about, and are looking forward to discussing the opportunity available to Limelight to address a large unmet market need with our globally scaled edge platform and operational know-how.

59.     On April 30, 2021, the Company filed with the SEC its Quarterly Report on Form 10-Q for the quarter ended March 31, 2021, affirming the previously reported financial results and representing further that its "disclosure controls and procedures were effective at the reasonable assurance level."

60.     On July 29, 2021, the Company filed with the SEC a Current Report on Form 8-K attaching a press release issued on that date announcing second quarter 2021 results. In the press release, the Company represented that it had revenue of $48.3 million, down 6 percent compared to $51.2 million in the first quarter of 2021 and down 17% compared to $58.5 million in the second quarter of 2020; GAAP net loss of $13.7 million, or $(0.11) per basic share, an improvement of $11.8 million from the net loss of $25.5 million, or $(0.21) per basic share, in

the first quarter of 2021, versus GAAP net loss of $1.7 million, or $(0.01) per basic share in the second quarter of 2020, inclusive of $2.2 million and $11.7 million in restructuring and transition related charges in the second and first quarters of 2021, respectively; Non-GAAP net loss of $8.0 million or $(0.06) per basic share, an improvement of $3.0 million from the net loss of 11.0 million, or (0.09) per basic share, in the first quarter of 2021, versus Non-GAAP net income of $3.5 million, or $0.03 per basic share in the second quarter of 2020; EBITDA of $(5.3) million, an improvement of $12.3 million from $(17.6) million for the first quarter of 2021, versus EBITDA of $4.5 million for the second quarter of 2020; and adjusted EBITDA of $0.2 million, an improvement of $3.5 million from $(3.3) million for the first quarter of 2021, versus adjusted EBITDA of $9.7 million for the second quarter of 2020.

61.    Regarding full year 2021 guidance, the Company maintained its prior guidance in the range of $220 million to $230 million for the full year 2021, except with regard to a reduction of capital expenditures from $20-25 million to $15-20 million. Commenting on the reported results, Lyons stated: "While much has been accomplished in a very short time, we have much more to do . . . . We will continue our pursuit of operational excellence, restoring client confidence, improving performance and returning value to our shareholders."

62.    On August 2, 2021, the Company filed with the SEC its Quarterly Report on Form 10-Q for the quarter ended June 30, 2021, affirming the previously reported financial results. The Company stated further that its "disclosure controls and procedures were effective at the reasonable assurance level."

63.    On November 4, 2021, the Company filed with the SEC a Current Report on Form 8-K attaching a press release issued on that date announcing "Strong Financial Results for the Third Quarter of 2021." In the press release, the Company represented that it had revenue of

$55.2 million, up 14 percent from the second quarter of 2021 and down 7% compared the third

quarter of 2020; GAAP net loss of $10.1 million, or $(0.08) per basic share, an improvement of

$6.6 million from the net loss of $13.7 million, or $(0.11) per basic share, in the second quarter

of 2021, versus GAAP net loss of $4.0 million, or $(0.03) per basic share in the third quarter of

2020, inclusive of $1.8 million and $2.2 million in restructuring and transition related charges in

the third and second quarters of 2021, respectively; Non-GAAP net loss of $1.5 million or $(0.01)

per basic share, an improvement of $6.5 million from the net loss of 8.0 million, or (0.06) per

basic share, in the second quarter of 2021, versus Non-GAAP net loss of $1.2 million, or $(0.01)

per basic share in the third quarter of 2020; EBITDA of $(2.0) million, an improvement of $3.3

million from $(5.3) million for the second quarter of 2021, versus EBITDA of $3.7 million for

the third quarter of 2020; and adjusted EBITDA of $6.1 million, an improvement of $5.9 million

from $0.2 million for the second quarter of 2021, versus adjusted EBITDA of $5.6 million for

the third quarter of 2020.

64.     Regarding full year 2021 guidance, Lyons stated:

Based on forecasts from our larger clients and their view of their content and post
COVID traffic patterns, we believe the fourth quarter will represent a return to
both sequential and year over year growth; with this traction and new products to
be launched over the next few months, we are also accelerating investments in
rebuilding our sales team. . . . We are making significant progress across the
company. Much has been accomplished in a very short time and much work
remains to be done. We will issue full year 2022 guidance with our fourth quarter
earnings results in February 2022.

65.     On November 5, 2021, the Company filed with the SEC its Quarterly Report on

Form 10-Q for the quarter ended September 30, 2021, affirming the previously reported financial

results. The Company stated further that its "disclosure controls and procedures were effective

at the reasonable assurance level."

-20-

66.     On January 20, 2022, the Company filed with the SEC a Current Report on Form 8-K attaching a press release issued on that date announcing, "Record Fourth Quarter Results and Provides Strong Guidance for 2022." In the press release, the Company represented that it had revenue of $62.9 million, up 14 percent from the third quarter of 2021 and compared to the third quarter of 2020; GAAP net loss of $7.7 million, or $(0.06) per basic share, an improvement of $2.4 million from the net loss of $10.1 million, or $(0.08) per basic share, in the third quarter of 2021, versus GAAP net loss of $8.3 million, or $(0.07) per basic share in the fourth quarter of 2020, inclusive of $2.6 million and $1.8 million in restructuring and transition related charges in the fourth and third quarters of 2021, respectively; Non-GAAP net income of $2.4 million or $0.02 per basic share, an improvement of $3.9 million from the net loss of $1.5 million, or $(0.01) per basic share, in the third quarter of 2021, versus Non-GAAP net loss of $3.8 million, or $(0.03) per basic share in the fourth quarter of 2020; Adjusted EBITDA was $9.7 million, an improvement of $3.6 million from $6.1 million for the third quarter of 2021, versus adjusted EBITDA of $3.6 million for the fourth quarter of 2020; and EBITDA of $0.5 million, an improvement of $2.5 million from $(2.0) million for the third quarter of 2021, versus break-even EBITDA for the fourth quarter of 2020.

67.     Commenting on these results, Lyons said:

We have made meaningful progress in our core business with dramatic performance improvements in our network, a revitalized go-to-market strategy and new product cadence. We are changing the narrative around Limelight from a usage-based network to a high growth, higher margin edge enabled solutions company. . . . Our integrated solution set is seeing significant traction, be it among startups or multi-billion companies, and across verticals such as financial services, consumer products and telecom. We are already gaining share of the incremental TAM we outlined in our August strategy session last year.

We are executing against our strategy and remain confident in our ability to build on this progress and continue delivering on our Improve-Expand-Extend framework.

68.     Regarding 2022 guidance, the Company projected revenue in the range of $240 million to $250 million for the full year 2022.

69.     On February 17, 2022, the Company filed with the SEC its Annual Report on Form 10-K for the year ended December 31, 2021, signed by Defendants Amaral, Bewsher, Genereux, Hadden, Lyons, and Peterschmidt, among others, affirming the previously reported financial results and representing that the Company's "disclosure controls and procedures were effective as of December 31, 2021." A certification pursuant to SOX signed by Lyons attested to the accuracy of the financial statements and the effectiveness of the Company's internal controls over financial reporting.

70.     On April 28, 2022, the Company filed with the SEC a Current Report on Form 8-K attaching a press release issued on that date announcing record first quarter 2022 results and issuing guidance for the full year 2022. In the press release, the Company represented that it had revenue of $58 million, up 13 percent from first quarter of 2021; GAAP net loss of $19.2 million, or $(0.14) per basic share, an improvement of $6.3 million from the net loss of $25.5 million, or $(0.21) per basic share in the first quarter of 2021, inclusive of $5.1 million in acquisition and legal related charges in the first quarter of 2022 and restructuring and transition related charges of $11.7 million in the first quarter of 2021; Non-GAAP net loss of $5.4 million or $(0.04) per basic share, an improvement of $5.6 million from the Non-GAAP net loss of $11.0 million, or $(0.09) per basic share, in the first quarter of 2021; EBITDA of $(10.9) million, an improvement of $6.7 million from $(17.6) million for the first quarter of 2021; and adjusted EBITDA of $2.0 million, an improvement of $5.2 million from a loss of $3.3 million in the first quarter of 2021.

71.     Regarding the full year 2022, the Company maintained its prior revenue guidance in the range of $240 million to $250 million. Daniel Boncel ("Boncel") , the Company's former

CFO, commented: "Given we anticipate closing the Edgecast acquisition in the next 30-60 days, we are maintaining our full year guidance. We expect to begin working with the Edgecast team on a bottom-up forecast for the remainder of the year immediately after we close and will provide combined guidance for the year as we finish that process. . . . In the short term, we expect second quarter revenue to be consistent with the first. With continued tight management of network and operating expenses, we would expect gross margin and adjusted EBITDA margin to continue its methodical expansion."

72.     On April 29, 2022, the Company filed with the SEC its Quarterly Report on Form 10-Q with the SEC for the quarter ended March 31, 2022, affirming the previously reported financial results. The Company stated further that its "disclosure controls and procedures were effective at the reasonable assurance level."

73.     On August 8, 2022, the Company filed with the SEC a Current Report on Form 8-K attaching a press release issued on that date announcing record second quarter 2022 results and issuing guidance for the full year 2022. In the press release, the Company represented that it had revenue of $74.3 million, up 54% from the previous year; and gross margin of 30%, up 1050 basis points year over year.

74.     Commenting on these results, Lyons said:

We continue to successfully execute on our multi-year transformation plan. In the past 12 months, we have completed two acquisitions, overhauled all aspects of our operating model, removed significant costs, and implemented a new growth-oriented commercial team. Our solutions are demonstrating proof of value, our clients are doing more with us as we innovate our technology business and continue to develop solutions to respond to dynamically evolving needs. While our strategy benefits from sector tailwinds, our innovation will allow us to continue to capture market share, sustain growth and improve profitability."

Second quarter 2022 revenue was ahead of plan and a historical best as we continue building on the momentum established late last year. While we do not intend to provide 2023 guidance until later this year, we have completed our initial bottom up outlook for next year. We remain very excited about these

transformative acquisitions and the foundation now in place to support our strategic objective of being the global leader in edge-enabled solutions for the outcome buyer - a technology company that can deliver continuously improving growth and profitability to our shareholders."

75.     Regarding the full year 2022, the Company increased its revenue guidance in the range of $380 million to $390 million.

76.     On August 9, 2022, the Company filed with the SEC its Quarterly Report on Form 10-Q for the quarter ended June 30, 2022, affirming the previously reported financial results. The Company stated further that its "disclosure controls and procedures were effective at the reasonable assurance level."

77.     On November 9, 2022, the Company filed with the SEC a Current Report on Form 8-K attaching a press release issued on that date announcing third quarter 2022 financial results and issuing guidance for the remainder of 2022. In the press release, the Company represented that it had revenue of $121.2 million, up 119% from the previous year, and 63% quarter over quarter; and GAAP gross margin was 30.5%, up 180 basis points year over year and 40 basis points quarter over quarter.

78.     Commenting on these results, Lyons said:

Across the organization, we are realizing the benefits of the transformational Edgecast acquisition. We had the first-ever eight figure TCV win in Applications solutions and replaced a major competitor at one of the largest fintech companies in the world. Our unique ability to seamlessly integrate scale-enabled performance, security and programmability at the edge are being recognized by some of the most savvy technology companies in the world. . . . Our growing pipeline includes major global brands that understand the demonstrative value in our solutions, with many in active proof of concept. We expect this momentum to continue into the fourth quarter, driven by our Security solutions.

79.     On the same day, the Company filed with the SEC its Quarterly Report on Form 10-Q for the third quarter ended September 30, 2022, affirming the previously reported financial

results. The Company stated further that its "disclosure controls and procedures were effective at the reasonable assurance level."

**C.      The Individual Defendants Acknowledged Their Awareness Of The Material Risks Regarding Edgio's Financial Reporting**

80.      The Individual Defendants repeatedly acknowledged their awareness of the material risks to Edgio in connection with legal compliance, the accuracy of Edgio's financial reports, and Edgio's need to maintain proper and effective internal controls over financial reporting. For example, Edgio's Forms 10-K for the years ended December 31, 2020 and 2021 expressly state:

> **If the accounting estimates we make, and the assumptions on which we rely, in preparing our financial statements prove inaccurate, our actual results may be adversely affected.**
>
> Our financial statements have been prepared in accordance with accounting principles generally accepted in the United States. The preparation of these financial statements requires us to make estimates and judgments about, among other things, taxes, revenue recognition, share-based compensation costs, contingent obligations and doubtful accounts. These estimates and judgments affect the reported amounts of our assets, liabilities, revenue and expenses, the amounts of charges accrued by us, and related disclosure of contingent assets and liabilities. We base our estimates on historical experience and on various other assumptions that we believe to be reasonable under the circumstances and at the time they are made. If our estimates or the assumptions underlying them are not correct, we may need to accrue additional charges or reduce the value of assets that could adversely affect our results of operations, investors may lose confidence in our ability to manage our business and our stock price could decline.
>
> **If we fail to maintain proper and effective internal controls or fail to implement our controls and procedures with respect to acquired or merged operations, our ability to produce accurate financial statements could be impaired, which could adversely affect our operating results, our ability to operate our business and investors' views of us.**
>
> We must ensure that we have adequate internal financial and accounting controls and procedures in place so that we can produce accurate financial statements on a timely basis. We are required to spend considerable effort on establishing and maintaining our internal controls, which is costly and time-consuming and needs to be re-evaluated frequently.

We have operated as a public company since June 2007, and we will continue to incur significant legal, accounting, and other expenses as we comply with the Sarbanes-Oxley Act of 2002, as well as new rules implemented from time to time by the SEC and the Nasdaq Global Select Market. These rules impose various requirements on public companies, including requiring changes in corporate governance practices, increased reporting of compensation arrangements and other requirements. Our management and other personnel will continue to devote a substantial amount of time to these compliance initiatives. Moreover, new rules and regulations will likely increase our legal and financial compliance costs and make some activities more time-consuming and costly. These rules and regulations could also make it more difficult for us to attract and retain qualified persons to serve on our board of directors, our board committees or as executive officers.

Section 404 of the Sarbanes-Oxley Act of 2002 requires that we include in our annual report our assessment of the effectiveness of our internal control over financial reporting and our audited financial statements as of the end of each fiscal year. Furthermore, our independent registered public accounting firm, Ernst & Young LLP (EY), is required to report on whether it believes we maintained, in all material respects, effective internal control over financial reporting as of the end of the year. Our continued compliance with Section 404 will require that we incur substantial expense and expend significant management time on compliance related issues, including our efforts in implementing controls and procedures related to acquired or merged operations. We currently do not have an internal audit group and use an international accounting firm to assist us with our assessment of the effectiveness of our internal controls over financial reporting. In future years, if we fail to timely complete this assessment, or if EY cannot timely attest, there may be a loss of public confidence in our internal controls, the market price of our stock could decline, and we could be subject to regulatory sanctions or investigations by the Nasdaq Global Select Market, the SEC or other regulatory authorities, which would require additional financial and management resources. In addition, any failure to implement required new or improved controls, or difficulties encountered in their implementation, could harm our operating results or cause us to fail to timely meet our regulatory reporting obligations.

### D. The Company Admits That Its Financial Statements For Over Two Years Were Materially False And Misleading When Made

81. On March 13, 2023, Edgio filed with the SEC a Current Report on Form 8-K attaching a press release issued on that date disclosing its need to restate the financial statements for the years ended December 31, 2021 and 2020, and all quarters of 2022 and 2021 because its Audit Committee "identified an error in the Company's historic accounting treatment of Edgio's

Open Edge solution." Specifically, the Company disclosed that sale of Open Edge equipment

should have been accounted as financing leases.

82.     The press release stated, in relevant part:

Adjustments to Open Edge Transactions

The Company and the Audit Committee identified an error in the Company's
historic accounting treatment of Edgio's Open Edge solution. Edgio's Open Edge
solution is a fully managed content delivery network ("CDN") service that
embeds Edgio's content delivery platform directly into internet service provider
("ISP") clients' networks (the "Impacted Transactions"). The Impacted
Transactions had a revenue sharing arrangement under which Edgio and ISP
clients shared revenue from the traffic that runs through a point of presence
("PoP") using Edgio's content delivery platform.

Based on the Company's review to-date of a sample of the Impacted Transactions
related to Edgio's large customers, which remains ongoing, ***the Company believes
the sale of Open Edge equipment should be accounted for as financing leases,
in which (1) the up-front payments received from the Company's customers
associated with the transaction are recognized as a financing liability on the
balance sheet, with the related equipment costs remaining in fixed assets and
depreciated over time, and (2) pursuant to lease accounting, the revenue
sharing payments made by Edgio to the customers allocated between cost of
sales and lease payments, as an offset on the balance sheet against the lease
liability.***

While the Company's determination regarding the revised accounting treatment
for the Impacted Transactions is based on management's evaluation of a sample
of the Impacted Transactions, the Company has not yet completed its evaluation
of all such transactions and could reach a different determination as to the
remaining transactions.

83.     The Company admitted in the press release that reported revenues would be

materially reduced as a result of the restatement:

The Company currently anticipates that the primary effects to correct this
accounting may result in a reduction in revenues of up to approximately $6.6
million for the 12-month period ended December 31, 2020, up to approximately
$16.7 million for the 12-month period ended December 31, 2021, and up to
approximately $23.0 million for the nine-month period ended September 30,
2022, with a corresponding costs of sales reduction and impact to depreciation
expenses and income taxes, as well as other adjustments. This represents a
reduction of 5.8% on a consolidated pro-forma basis for the nine months ending

September 30, 2022, and a reduction in previously reported revenue of 7.7% in 2021 and 2.9% in 2020.

84.     The Company further disclosed that it was still evaluating the financial impact of the accounting error and could not file its fiscal 2022 Annual Report on time. The Company expected to disclose "a material weakness in the Company's design and operation of effective internal controls over the accounting for the Impacted Open Edge transactions."

85.     On the same day, Edgio filed with the SEC a Form 12b-25 stating that it was unable to file its Annual Report on Form 10-K for the year ended December 31, 2022 by the applicable filing deadline because its management and Audit Committee determined that prior financial statements for the years ended December 31, 2021 and 2020, as well as the previously filed quarterly reports for the periods ending March 31, 2022 and 2021, June 30, 2022 and 2021 and September 30, 2022 and 2021 should be restated and no longer be relied upon due to an error in accounting for sales of Edgio's Open Edge solution.

86.     On this news, the Company's share price fell $0.1597, or 15.5%, to close at $0.8703 per share on March 13, 2023.

87.     On May 10, 2023, Edgio filed with the SEC a Form 12b-25 stating that it was unable to file its Quarterly Report on Form 10-Q for the period ended March 31, 2023 by the May 10, 2023 filing deadline due to the time and focus dedicated to the Company's review and restatement of prior financial reports.

88.     On June 29, 2023, Edgio filed with the SEC a Current Report on Form 8-K attaching a press release issued on that date disclosing the completion of the Company's restatement of its previously issued financials. The press release stated that Edgio simultaneously filed with the SEC its Annual Report on Form 10-K for the year ended December 31, 2022 (the "2022 10-K"), including the restatement of the Company's previously issued financial statements

in its Annual Reports on Form 10-K for the years ended December 31, 2021 and 2020, as well as the previously filed Quarterly Reports on Form 10-Q for the quarterly periods ended March 31, 2022 and 2021, June 30, 2022 and 2021, and September 30, 2022 and 2021. The restatement resulted in a reduction in revenues of $6.2 million for the 12-month period ended December 31, 2020, $16.5 million for the 12-month period ended December 31, 2021, and $23.7 million for the nine-month period ended September 30, 2022. Regarding the periods ended March 31, 2023, and June 30, 2023, the Company disclosed that it continues to work diligently to finalize them and expected to file them in August 2023.

89.     In the 2022 10-K,[3] Edgio affirmed the previously reported restatement results and represented further that the restatement was principally due to management's improper accounting for Open Edge transactions. As reported in the 2022 10-K, Open Edge transactions involve the transfer of Edgio's equipment, including routing and server communications hardware, to various counterparties, typically Internet service providers ("ISP" and also "partner") in order to establish a point of presence ("PoP") in the partner's network. The equipment includes Edgio's proprietary content delivery software, which allows Edgio to host, use, process, display, and transmit Edgio's clients' content through the partner's network. The Open Edge transactions are usually contingent on the parties entering into a separate services agreement, which includes a revenue sharing provision whereby Edgio pays the partner a percentage of the revenue earned from the Company's clients through the PoP equipment in exchange for co-location and network services from the partner. The arrangements typically also include a minimum fee commitment where Edgio promises to pay a minimum fee over a

---

[3] The 2022 10-K was signed by Defendants Lyons, Amaral, Bewsher, Genereux, Ledingham, Hadden, Peterschmidt, Rayman, and Wang.

specified term to the partner regardless of the revenue share earned by the partner through the PoP equipment. The revenue share paid by Edgio counts towards the minimum fee commitment.

90.     According to the 2022 10-K, the Open Edge arrangements originally reported in the Company's prior financial reports and quarterly and yearly filings were not – but should have been – accounted for as financing arrangements, in which (1) the up-front payments received from partners are recognized as a financing liability on the balance sheet, with the related equipment remaining in the Company's fixed assets and depreciated over their remaining useful lives, and (2) the minimum fee commitment payments made by Edgio to the partners are allocated between principal payments on the financing liability, interest expense, and cost of services related to co-location and local bandwidth services.

91.     The 2022 10-K stated that the restatement of the financials for the quarters ended June 30, 2022 and September 30, 2022, also involved errors accounting for transitional services provided by College Parent to Edgio at no charge. These transitional services provided at no charge were not – but should have been – accounted for as capital contributions due to College Parent's ownership interest in Edgio with estimated fair value of the services expensed as incurred.

92.     The 2022 10-K disclosed that the restatement resulted in the following summarized impacts to previously reported consolidated statements of operations (in thousands, except per share data):

**Years Ended December 31,**

|  | 2021 | 2020 |
|---|---|---|
|  | Restatement Impact | Restatement Impact |
| Revenue (decrease) | $           (16,515) | $           (6,204) |
| Total cost of revenue (decrease) | (10,488) | (3,375) |
| Gross profit (decrease) | $           (6,027) | $           (2,829) |

| | | |
|---|---:|---:|
| Net loss (increase) | $ (6,405) | $ (2,850) |
| Basic and diluted loss per share (increase) | $ (0.05) | $ (0.02) |

| | Three Months Ended | | | Six Months Ended | Nine Months Ended |
|---|---|---|---|---|---|
| | Sept. 30, 2022 | June 30, 2022 | March 31, 2022 | June 30, 2022 | September 30, 2022 |
| | Restatement Impact | Restatement Impact | Restatement Impact | Restatement Impact | Restatement Impact |
| Revenue (decrease) | $ (10,324) | $ (10,726) | $ (2,620) | $ (13,345) | $ (23,669) |
| Total cost of revenue (decrease) | (6,219) | (6,482) | (1,638) | (8,119) | (14,338) |
| Gross profit (decrease) | $ (4,105) | $ (4,244) | $ (982) | $ (5,226) | (9,331) |
| Net loss (increase) | $ (6,506) | $ (4,170) | $ (1,100) | $ (5,270) | $ (11,776) |
| Basic and diluted loss per share (increase) | $ (0.03) | $ (0.03) | $ (0.01) | $ (0.03) | $ (0.07) |

| | Three Months Ended | | | | Nine Months Ended | Six Months Ended |
|---|---|---|---|---|---|---|
| | Dec. 31, 2021 | Sept. 30, 2021 | June 30, 2021 | March 31, 2021 | Sept. 30, 2021 | June 30, 2021 |
| | Restatement Impact | Restatement Impact | Restatement Impact | Restatement Impact | Restatement Impact | Restatement Impact |
| Revenue (decrease) | $ (5,707) | $ (7,208) | $ (2,063) | $ (1,537) | $ (10,808) | $ (3,600) |
| Total cost of revenue (decrease) | (3,528) | (3,364) | (1,997) | (1,576) | (6,960) | (3,596) |
| Gross profit (decrease) | $ (2,179) | $ (3,844) | $ (66) | $ 39 | $ (3,848) | $ (4) |
| Net loss (increase) | $ (2,465) | $ (3,881) | $ (99) | $ 40 | $ (3,940) | $ (59) |
| Basic and diluted loss per share (increase) | $ (0.02) | $ (0.03) | $ — | $ — | $ (0.03) | $ — |

93.    Regarding the Company's restated revenue, costs, and expenses for the periods ending December 31, 2021 and 2020, and the previously delayed period ending December 31, 2022, Edgio reported the following:

Years Ended December 31,

| | 2022 | | 2021 As Restated | | 2020 As Restated | |
|---|---|---|---|---|---|---|
| Revenue | $338,598 | 100.0 % | $201,115 | 100.0 % | $223,990 | 100.0 % |
| Cost of revenue | 231,058 | 68.2 % | 146,793 | 73.0 % | 143,713 | 64.2 % |
| Gross profit | 107,540 | 31.8 % | 54,322 | 27.0 % | 80,277 | 35.8 % |
| Operating expenses | 235,346 | 69.5 % | 94,514 | 47.0 % | 97,500 | 43.5 % |
| Restructuring charges | 20,030 | 5.9 % | 13,425 | 6.7 % | — | — % |
| Operating loss | (147,836) | (43.7)% | (53,617) | (26.7)% | (17,223) | (7.7) % |
| Total other expense | (9,763) | (2.9) % | (6,395) | (3.2) % | (4,259) | (1.9) % |
| Loss before income taxes | (157,599) | (46.5)% | (60,012) | (29.8)% | (21,482) | (9.6) % |
| Income tax expense | (21,080) | (6.2) % | 1,154 | 0.6 % | 645 | 0.3 % |
| Net loss | $(136,519) | (40.3)% | $(61,166) | (30.4)% | $(22,127) | (9.9) % |

94.    Regarding Edgio's restated unaudited consolidated statements of operations by quarter for the quarters ended March 31, 2022, and 2021, June 30, 2022 and 2021, September 30, 2022 and 2021, and three-month period ended December 31, 2021, the Company disclosed the following in the 2022 10-K:

| 2022 | | | | 2021 | | |
|---|---|---|---|---|---|---|
| **Three Months Ended** | | | | | | |
| Sept. 30 | June 30 | March 31 | Dec.31 | Sept. 30 | June 30 | March 31 |

|  | As Restated | | | As Restated | | | |
|---|---|---|---|---|---|---|---|
| Revenue | $110,832 | $ 63,586 | $ 55,339 | $57,178 | $ 47,994 | $ 46,285 | $ 49,658 |
| Cost of revenue: | | | | | | | |
| Cost of services | 67,140 | 38,718 | 32,673 | 30,876 | 29,892 | 30,669 | 31,250 |
| Depreciation — network | 10,903 | 6,791 | 5,848 | 5,876 | 6,116 | 6,239 | 5,874 |
| Total cost of revenue | 78,043 | 45,509 | 38,521 | 36,752 | 36,008 | 36,908 | 37,124 |
| Gross profit | 32,789 | 18,077 | 16,818 | 20,426 | 11,986 | 9,377 | 12,534 |
| Operating expenses: | | | | | | | |
| General and administrative | 22,138 | 26,812 | 15,833 | 9,147 | 10,532 | 7,515 | 12,897 |
| Sales and marketing | 14,448 | 10,834 | 7,627 | 8,341 | 5,987 | 5,784 | 9,848 |
| Research and development | 32,462 | 12,171 | 9,577 | 5,149 | 5,205 | 5,187 | 6,128 |
| Depreciation and amortization | 5,943 | 1,508 | 1,032 | 976 | 730 | 549 | 540 |
| Restructuring charges | 4,070 | 4,368 | 698 | 2,627 | 1,770 | 2,155 | 6,873 |
| Total operating expenses | 79,061 | 55,693 | 34,767 | 26,240 | 24,224 | 21,190 | 36,286 |
| Operating loss | (46,272) | (37,616) | (17,949) | (5,814) | (12,238) | (11,813) | (23,752) |
| Other income (expense): | | | | | | | |
| Interest expense | (1,546) | (1,458) | (1,431) | (1,432) | (1,345) | (1,338) | (1,308) |
| Interest income | 140 | 33 | 27 | 30 | 17 | 42 | 45 |
| Other, net | (1,005) | (1,146) | (713) | (242) | (209) | (440) | (214) |
| Total other expense | (2,411) | (2,571) | (2,117) | (1,644) | (1,537) | (1,736) | (1,477) |
| Loss before income taxes | (48,683) | (40,187) | (20,066) | (7,458) | (13,775) | (13,549) | (25,229) |
| Income tax expense (benefit) | 440 | (19,589) | 206 | 436 | 211 | 248 | 260 |
| Net loss | $(49,123) | $(20,598) | $(20,272) | $(7,894) | $(13,986) | $(13,797) | $(25,489) |

| Net loss per share: | | | | | | | |
|---|---|---|---|---|---|---|---|
| Basic | $ (0.22) | $ (0.14) | $ (0.15) | $ (0.06) | $ (0.11) | $ (0.11) | $ (0.21) |
| Diluted | $ (0.22) | $ (0.14) | $ (0.15) | $ (0.06) | $ (0.11) | $ (0.11) | $ (0.21) |
| Weighted-average shares used in per share calculation: | | | | | | | |
| Basic | 220,194 | 151,776 | 135,528 | 134,023 | 126,791 | 126,050 | 124,290 |
| Diluted | 220,194 | 151,776 | 135,528 | 134,023 | 126,791 | 126,050 | 124,290 |

95.     Additionally, the Company identified internal controls that were not effective and were anticipated to continue to not be effective, constituting material weaknesses such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis:

> [O]ur management has assessed the effectiveness of our internal control over financial reporting. Based on this assessment, management identified material weaknesses in our internal control over financial reporting resulting in the conclusion by our Chief Executive Officer and Chief Financial Officer that our internal control over financial reporting controls and procedures were not effective as of December 31, 2022. Management is taking steps to remediate the material weaknesses in our internal control over financial reporting.

96.     The 2022 10-K disclosed the following unremedied material weaknesses in internal control over financial reporting as of December 31, 2022:

> 1) Non-routine/complex transactions
>
> We identified deficiencies related to the design of controls to analyze, account for and disclose complex transactions included in certain contractual arrangements such as (i) the "Open Edge" agreements and (ii) the Transition Service Agreement entered into between the company and Yahoo, Inc. as part of the Edgecast acquisition during the second quarter of 2022 (both of which resulted in the restatement of our previously issued consolidated financial statements, as described in Note 3). We also identified deficiencies in the design of certain other controls related to the Edgecast acquisition, including those that related to the identification of proper inputs and assumptions used in valuation models and a lack of sufficiently precise review of opening balance sheet accounts. Specifically, given the complexity of these agreements, we determined there was a lack of sufficient technical accounting personnel involved with the review and evaluation of these contractual agreements and transactions to ensure they were

accounted for in accordance with US GAAP and in order to prevent or detect material misstatements on a timely basis.

2) Revenue accounting system controls

We identified deficiencies related to the design of application controls and information technology dependent manual controls related to certain revenue processes. There was inaccurate data aggregation and processing of revenue events within our storage revenue systems, a lack of controls to identify and resolve errors if and when they occur, and a lack of sufficient documentation over the review of underlying data and reports used in the revenue accounting process. In addition, the operation of controls related to the precision of review of certain content delivery agreements entered into during 2022 was not sufficient.

3) Financial close and reporting processes

We identified certain operating deficiencies related to the control activities related to segregation of duties controls over the preparation and review of journal entries. In addition, we identified certain operating deficiencies over the performance of certain account reconciliations, which was impacted by the growth in the organization from the Edgecast acquisition, and our ongoing effort to expand the accounting team during 2022.

97.     Regarding the relationship between College Parent and Edgio, the 2022 10-K disclosed that "College Parent and its related affiliates is considered to be a related party following the close of the Edgecast Acquisition due to its ownership interest[, as] of December 31, 2022, [of] approximately 36% . . . in Edgio."

**E.     Edgio Is Sued In Securities Fraud Class Action Lawsuits**

98.     On April 25, 2023, a securities class action lawsuit was filed in the United States District Court for the District of Arizona against the Company, Lyons, Boncel, and Stephen Cumming ("Cumming"), Edgio's current CFO, alleging violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC, captioned *Esfandiari v. Edgio Incorporated et al.*, No. 2:23-cv-00691-DJH (D. Ariz.). The plaintiff seeks damages on behalf of a class who purchased Edgio shares between February 21, 2021, and March 12, 2023, inclusive, pleading that

the defendants made materially false and misleading statements and omissions by failing to disclose: (1) that the sale of Open Edge equipment should be accounted for as financing leases; (2) that there were material weaknesses in the Company's internal controls over financial reporting; and (3) that, as a result, the Company's revenue had been overstated in certain periods.

99.     On June 23, 2023, a second securities class action lawsuit was filed in the United States District Court for the District of Arizona against the Company, Lyons, Robert A. Lento, Edgio's former CEO until February 2021, Boncel, and Cumming alleging violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC, captioned *Marinelli v. Edgio Incorporated, et al.*, No. 2:23-cv-01170-SMM (D. Ariz.). The plaintiff seeks damages on behalf of a class who purchased Edgio shares between July 21, 2020, and March 12, 2023, inclusive, asserting that defendants made materially false and misleading statements and omissions by failing to disclose: (1) that the sale of Open Edge equipment should be accounted for as financing leases; (2) that there were material weaknesses in the Company's internal controls over financial reporting; and (3) that, as a result, the Company's revenue had been overstated in certain periods.

100.    As such, the Company is now subject to substantial liability and will be forced to expend substantial sums to defend itself and its officers, as well as to potentially resolve these matters.

**F.     Edgio's False And Misleading Proxy Statement**

101.    On May 4, 2022, the Company filed its 2022 Proxy Statement with the SEC soliciting shareholder votes to, among other things, approve the issuance of new Limelight shares to College Parent in connection with the purchase of Edgecast, to re-elect Defendants Peterschmidt and Lyons to the Board, and to ratify Ernst & Young LLP ("EY") as the Edgio

independent registered public accounting firm. The Proxy Statement was issued by the order of the Board and signed by Defendant Lyons.

102.    The 2022 Proxy Statement represents that the Board oversees and monitors the Company's risk exposures:

**The Board's Role in Risk Oversight**

We have a comprehensive risk management process in which management is responsible for identifying and managing the Company's risks, and the board of directors and its committees provide oversight in connection with these efforts. Risks are identified, assessed, and managed on an ongoing basis and communicated to management during periodic management meetings or otherwise, as appropriate. Existing and potential material risks are addressed during periodic senior management meetings, resulting in both board and committee discussions. In addition, risk assessment is embedded in our business decision-making, business planning, budgeting, and strategic planning.

The board of directors is responsible for overseeing management in the execution of its risk management responsibilities and for assessing the Company's approach to risk management. The board of directors administers this risk oversight function either through the full board or through one of its four standing committees, each of which examines various components of the Company's enterprise risks as part of its responsibilities. The full board reviews enterprise-wide strategic risks and certain other higher risk areas on a regular basis. An overall review of risk is inherent in the board's consideration of our long-term strategies and in the transactions and other matters presented to the board of directors, including capital expenditures, manufacturing capacity expansions, acquisitions, budgeting, *and significant financial matters*.

103.    The 2022 Proxy Statement represents that management "regularly reports on risk-related matters to the board of directors or the relevant committee thereof. Further, the 2022 Proxy Statement represents that "[m]anagement presentations containing information regarding risks and risk management initiatives are given throughout the year in connection with quarterly and special board and committee meetings as well as other communications as needed or as requested by the board of directors or its committees." Further, the "director of internal audit reports to the audit committee [quarterly] and has open access to the chair of the audit committee."

104.    The 2022 Proxy Statement represents that the Company has robust corporate governance based on the expertise of the Board:

> Our board of directors comprises members who have held numerous public and private company directorships, as well as CEO, CFO, COO, and other senior executive positions. Through this, they have gained expertise in strategic planning, business development, risk management, and corporate governance.
>
> ***
>
> Collectively, the diverse skills of our board of directors, their lengthy business and governance experience, and a complementary mix of longer-tenured directors possessing industry and institutional history together with more recently tenured directors who provide new viewpoints, allows for informed discussions and thoughtful decision making by the board.

105.    The 2022 Proxy Statement represents that the Audit Committee's "primary function is to oversee [Edgio's] corporate accounting and financial reporting process," including:

- Reviewing Edgio's financial statements and its critical accounting policies and estimates; and

- Reviewing and discussing with management and Edgio's independent registered public accounting firm the annual audit results, and quarterly and annual financial statements, including any major issues regarding accounting, disclosure, auditing procedures and practices, and the adequacy of internal controls that could materially affect Edgio's financial statements.

106.    The 2022 Proxy Statement represents that the Audit Committee "regularly reviews . . . financial and accounting, legal and compliance risks, . . . and other risk management functions."

107.    Regarding the Audit Committee's Report contained in the 2022 Proxy Statement, it represented that the Audit Committee:

- Oversees Edgio's financial reporting process and its internal controls over financial reporting; and

- Recommended to Edgio's board that the audited consolidated financial statements be included in its Annual Report on Form 10-K, as amended and in its Annual Report to our stockholders for the year ended December 31, 2021.

108.    The foregoing statements in the 2022 Proxy Statement were false and misleading and omitted material information. Contrary to the representations made in the Proxy, the Board was required, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Edgio's core operations and making truthful, accurate, and complete statements; (2) effectively oversee the material risks facing the Company; and (3) implement and maintain an internal control system of financial reporting sufficient to accurately reflect the Company's financial condition and operations and to detect and remediate any violation of the laws, rules, and regulations governing financial reporting, and to monitor those internal control systems for compliance.

109.    On June 9, 2022, Edgio filed with the SEC a Current Report on Form 8-K announcing the reelection of Defendants Lyons and Peterschmidt to the Board, the approval of the issuance of new Limelight shares to College Parent in connection with the purchase of Edgecast, and ratification of EY as the Edgio independent registered public accounting firm pursuant to the solicitation in the 2022 Proxy Statement.

### G.    Defendant Lyons Financially Benefited From The Misconduct

110.    The 2022 Edgio Proxy Statement disclosed that Defendant Lyons received equity awards for fiscal 2021 pursuant to the Company's 2007 Amended and Restated Equity Incentive Plan. According to the 2020 Proxy, the equity incentive plan is a "a key factor in motivating and retaining executive personnel, as well as incentivizing executive personnel to preserve the current value and grow the future value of [Edgio] common stock, thereby furthering the interests of [Edgio]'s other stockholders." The 2022 Edgio Proxy Statement states that Lyons was awarded 361,147 Restricted Stock Units and 541,720 stock options, in each case vesting over the

following three years. Of the foregoing stock awards, Lyons exercised his stock options upon vesting in 2021 to acquire 80,071 Edgio shares at $3.88 per share for realized value of $237,811.

## VI.   DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

111.   Plaintiff brings this action derivatively and for the benefit of Edgio to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Edgio, gross mismanagement, and violations of Section 14(a) of the Exchange Act, as well as the aiding and abetting thereof.

112.   Edgio is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

113.   Plaintiff is, and has been at all relevant times, a stockholder of Edgio and was a stockholder of the Company at the time of the transactions alleged herein. Plaintiff will adequately and fairly represent the interests of Edgio in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

114.   Demand upon the Board to institute this action against the Individual Defendants would be futile and is, therefore, excused. The Board is neither disinterested nor independent.

### A.   Rayman And Wang Dominate And Control The Board And Edgio

115.   Rayman and Wang were appointed to Edgio's Board by College Parent, L.P., in connection with Edgio's acquisition of Edgecast Inc. ("Edgecast"), a business unit of Yahoo! Inc. ("Yahoo") and certain Edgecast-related businesses and assets from College Parent in accordance with the Stockholders Agreement between College Parent and the Company whereby College Parent may designate one director for each class of Edgio director.

116.    College Parent is an Edgio related party due to College Parent's approximate 37% ownership interest in Edgio. According to a written policy adopted by the Edgio Board, a related party consists of any stockholder beneficially owning more than 5% of Edgio's common stock or an immediate family member of such stockholder. College Parent is 90% owned by affiliates of Apollo Global Management, Inc. ("Apollo"), a global alternative asset management business and private equity firm, and 10% owned by Verizon Communications Inc., which is Yahoo's parent company and an indirect subsidiary of Apollo.

117.    Rayman is a partner at Apollo, where he has worked since 2010, and serves on the Board of Directors of Yahoo.

118.    Like Rayman, Wang was appointed by College Parent in accordance with the Stockholders Agreement between College Parent and the Company whereby College Parent may designate one director for each class of Edgio director.

119.    Wang is also an associate at Apollo, where he has worked since 2017, and also serves on the Board of Yahoo.

120.    Rayman and Wang, as designees of Apollo and College Parent, control 37% of the shareholder vote of Edgio.

**B.    Demand Upon Defendant Amaral Is Excused**

121.    Defendant Amaral is an Edgio director since 2007 and was Chairman of the Board from 2013 through 2021. He is also chair of Edgio's Audit Committee, and a member of its Compensation Committee and Nominating and Governance Committee.

122.    Amaral received $182,490 in 2022 in compensation in the form of fees and stock awards for his service as a director. Amaral earns compensation far in excess of the compensation that directors earn at equivalently sized companies. For example, according to FW Cook's 2022

Director Compensation Report, the median director compensation per year at a small cap company like Edgio is $120,000, so Amaral received 50% more than the compensation of a director at a comparably capitalized company. If Amaral acknowledged that he, Edgio, or others engaged in misconduct, his lucrative position would be jeopardized.

123.    Defendant Amaral will not investigate and take action against those responsible for the wrongdoing pled herein because doing so would harm him and his investments. As of March 31, 2023, Amaral held 301,259 shares of Edgio common stock. If Amaral admitted that he, Edgio, or others engaged in misconduct, his investment in Edgio would be substantially devalued. Further, if Amaral acknowledged that executives at Edgio had engaged in the wrongdoing alleged, he would be acknowledging that he, as a major investor with long-term involvement in the Company as a director, either knew of the wrongdoing or should have known of the wrongdoing.

124.    Amaral authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefore.

125.    Amaral, as a director of Edgio, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Edgio's core operations and making truthful, accurate, and complete statements to investors; (2) effectively oversee the material risks facing the Company; and (3) implement and maintain an internal control system of financial reporting sufficient to accurately reflect the Company's financial condition and operations and to detect and remediate any violation of the laws, rules, and regulations governing financial reporting, and to monitor those internal control systems for compliance. Had Amaral taken timely action, the damage caused to Edgio could have been prevented or minimized.

126. As the Chair of Edgio's Audit Committee, Amaral had duties regarding oversight of the accounting and financial reporting processes of the Company and audits of the financial statements of the Company. Amaral utterly failed to perform these essential duties.

127. As a member of Edgio's Compensation Committee, Amaral had the duty to assist the Board in fulfilling its responsibilities relating to the fair and appropriate compensation of executives and directors. Amaral utterly failed to perform these essential duties.

128. As a member of the Nominating and Governance Committee, Amaral had the duty, among others, to ensure the implementation and effectiveness of Edgio's Corporate Governance Guidelines. Amaral utterly failed to perform these duties.

129. Amaral is neither disinterested nor independent. Any demand upon Defendant Amaral is futile and, thus, excused.

**C.      Demand Upon Defendant Bewsher Is Excused**

130. Defendant Bewsher is an Edgio director since 2017and a member of its Nominating and Governance Committee

131. Bewsher received $155,740 in 2022 in compensation in the form of fees and stock awards for his service as a director. Bewsher earns compensation far in excess of the compensation that directors earn at equivalently sized companies. For example, according to FW Cook's 2022 director compensation survey, the median director compensation per year at a small cap company like Edgio is $120,000, so Bewsher received approximately 30% more than the compensation of a director at a comparably capitalized company. If Bewsher acknowledged that he, Edgio, or others engaged in misconduct, his lucrative position would be jeopardized.

132. Defendant Bewsher will not investigate and take action against those responsible for the wrongdoing pled herein because doing so would harm him and his investments. As of

March 31, 2023, Bewsher held 127,458 shares of Edgio common stock. If Bewsher admitted that he, Edgio, or others engaged in misconduct, his investment in Edgio would be substantially devalued. Further, if Bewsher acknowledged that executives at Edgio had engaged in the wrongdoing alleged, he would be acknowledging that he, as a major investor with long-term involvement in the Company as a director, either knew of the wrongdoing or should have known of the wrongdoing.

133.    Bewsher authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefore.

134.    Bewsher, as an Edgio director, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Edgio's core operations and making truthful, accurate, and complete statements to investors; (2) effectively oversee the material risks facing the Company; and (3) implement and maintain an internal control system of financial reporting sufficient to accurately reflect the Company's financial condition and operations and to detect and remediate any violation of the laws, rules, and regulations governing financial reporting, and to monitor those internal control systems for compliance. Had Bewsher taken timely action, the damage caused to Edgio could have been prevented or minimized.

135.    As a member of the Nominating and Governance Committee, Bewsher had the duty, among others, to ensure the implementation and effectiveness of Edgio's Corporate Governance Guidelines. Bewsher utterly failed to perform these duties.

136.    Bewsher is neither disinterested nor independent. Any demand upon Defendant Bewsher is futile and, thus, excused.

**D.      Demand Upon Defendant Genereux Is Excused**

137.    Defendant Genereux is a member of Edgio's Board since 2017, Chair of its Nominating and Governance Committee since August 2022, and prior Chair of its Compensation Committee until August 2022.

138.    Genereux received $167,990 in compensation for his service as a director in 2022 in the form of fees and stock awards. Genereux earns compensation far in excess of the compensation that directors earn at equivalently sized companies. For example, according to FW Cook's 2022 director compensation survey, the median director compensation per year at a small cap company like Edgio is $120,000, so Genereux received approximately 40% more than the compensation of a director at a comparably capitalized company. If Genereux acknowledged that he, Edgio, or others engaged in misconduct, his lucrative position would be jeopardized.

139.    Genereux will not investigate and take action against those responsible for the wrongdoing pled herein because doing so would harm him and his investments. As of March 31, 2022, Genereux held 143,305 shares of Edgio common stock. If Genereux admitted that he, Edgio, or others engaged in misconduct, his investment in Edgio would be substantially devalued and his lucrative position jeopardized. Further, if Genereux acknowledged that executives at Edgio had engaged in the wrongdoing alleged, he would be acknowledging that he, as a major investor with long-term involvement in the Company, either knew of the wrongdoing or should have known of the wrongdoing.

140.    Genereux authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefore.

141.    Genereux, as an Edgio director, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Edgio's core operations and making truthful, accurate,

and complete statements to investors; (2) effectively oversee the material risks facing the Company; and (3) implement and maintain an internal control system of financial reporting sufficient to accurately reflect the Company's financial condition and operations and to detect and remediate any violation of the laws, rules, and regulations governing financial reporting, and to monitor those internal control systems for compliance. Had Genereux taken timely action, the damage caused to Edgio could have been prevented or minimized.

142.    As the Chair of the Nominating and Governance Committee, Genereux had the duty, among others, to ensure the implementation and effectiveness of Edgio's Corporate Governance Guidelines. Genereux utterly failed to perform these duties.

143.    As a member of Edgio's Compensation Committee, Genereux had the duty to assist the Board in fulfilling its responsibilities relating to the fair and appropriate compensation of executives and directors. Genereux utterly failed to perform these essential duties.

144.    Genereux is neither disinterested nor independent. Any demand upon Defendant Genereux is futile and, thus, excused.

**E.    Demand Upon Defendant Hadden Is Excused**

145.    Defendant Hadden is a member of Edgio's Board since 2018, and a member of its Nominating and Governance Committee.

146.    Hadden received $155,740 in compensation for his service as a director in 2022 in the form of fees and stock awards. Hadden earns compensation far in excess of the compensation that directors earn at equivalently sized companies. For example, according to FW Cook's 2022 director compensation survey, the median director compensation per year at a small cap company like Edgio is $120,000, so Hadden received approximately 30% more than the

compensation of a director at a comparably capitalized company. If Hadden acknowledged that he, Edgio, or others engaged in misconduct, his lucrative position would be jeopardized.

147.    Defendant Hadden will not investigate and take action against those responsible for the wrongdoing pled herein because doing so would harm her and her investments. As of March 31, 2022, Hadden held 87,773 shares of Edgio common stock and received $155,740 in compensation in the form of fees and stock option awards for her service as a director in 2021. If Hadden admitted that she, Edgio, or others engaged in misconduct, her investment in Edgio would be substantially devalued and her lucrative position jeopardized. Further, if Hadden acknowledged that executives at Edgio had engaged in the wrongdoing alleged, she would be acknowledging that she, as a major investor with long-term involvement in the Company, either knew of the wrongdoing or should have known of the wrongdoing.

148.    Hadden authorized the 2022 Proxy Statements containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefore.

149.    Hadden, as a director, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Edgio's core operations and making truthful, accurate, and complete statements to investors; (2) effectively oversee the material risks facing the Company; and (3) implement and maintain an internal control system of financial reporting sufficient to accurately reflect the Company's financial condition and operations and to detect and remediate any violation of the laws, rules, and regulations governing financial reporting, and to monitor those internal control systems for compliance. Had Hadden taken timely action, the damage caused to Edgio could have been prevented or minimized.

150.    As a member of the Nominating and Governance Committee, Hadden had the duty, among others, to ensure the implementation and effectiveness of Edgio's Corporate Governance Guidelines. Hadden utterly failed to perform these duties.

151.    Hadden is neither disinterested nor independent. Any demand upon Defendant Hadden is futile and, thus, excused.

**F.      Demand Upon Defendant Ledingham Is Excused**

152.    Defendant Ledingham is an Edgio director since June 2022, Chair of its Compensation Committee since August 2022, and member of its Audit Committee and Nominating and Governance Committee.

153.    Ledingham received $301,350 in compensation for her service as a director in 2022 in the form of fees and stock awards. Ledingham earns compensation far in excess of the compensation that directors earn at equivalently sized companies. For example, according to FW Cook's 2022 director compensation survey, the median director compensation per year at a small cap company like Edgio is $120,000, so Ledingham received 250% more than the compensation of a director at a comparably capitalized company. If Ledingham acknowledged that he, Edgio, or others engaged in misconduct, her lucrative position would be jeopardized.

154.    Defendant Ledingham will not investigate and take action against those responsible for the wrongdoing pled herein because doing so would harm her. She received $301,350 compensation in the form of fees and stock option awards for her service as a director in 2021. If Ledingham admitted that she, Edgio, or others engaged in misconduct, her investment in Edgio would be substantially devalued and her lucrative position jeopardized. Further, if Ledingham acknowledged that executives at Edgio had engaged in the wrongdoing alleged, she

would be acknowledging that she, as a director in the Company, either knew of the wrongdoing or should have known of the wrongdoing.

155.    Ledingham authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefore.

156.    Ledingham, as a director of Edgio, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Edgio's core operations and making truthful, accurate, and complete statements to investors; (2) effectively oversee the material risks facing the Company; and (3) implement and maintain an internal control system of financial reporting sufficient to accurately reflect the Company's financial condition and operations and to detect and remediate any violation of the laws, rules, and regulations governing financial reporting, and to monitor those internal control systems for compliance. Had Ledingham taken timely action, the damage caused to Edgio could have been prevented or minimized.

157.    As a member of Edgio's Audit Committee, Ledingham had duties regarding oversight of the accounting and financial reporting processes of the Company and audits of the financial statements of the Company. Ledingham utterly failed to perform these essential duties.

158.    As Chair of Edgio's Compensation Committee, Ledingham had the duty to assist the Board in fulfilling its responsibilities relating to the fair and appropriate compensation of executives and directors. Ledingham utterly failed to perform these essential duties.

159.    As a member of the Nominating and Governance Committee, Ledingham had the duty, among others, to ensure the implementation and effectiveness of Edgio's Corporate Governance Guidelines. Ledingham utterly failed to perform these duties.

160.     Ledingham is neither disinterested nor independent. Any demand upon Defendant Ledingham is futile and, thus, excused.

**G.     Demand Upon Defendant Lyons Is Excused**

161.     Lyons has served as Edgio's President and CEO since February 2021. Lyons therefore is not independent. Indeed, Edgio's 2022 Proxy does not list Lyons as an independent director.

162.     The Company provides Lyons with his principal occupation from which he receives substantial compensation. Lyons's total compensation was $3,325,961 in 2021 and $3,686,657 in 2022. Thus, Lyons could not consider a demand for action that might require him to sue the directors that control his continued employment and/or fellow members of management with whom he works on a day-to-day basis.

163.     Lyons will not investigate and take action against those responsible for the wrongdoing pled herein because doing so would harm him and his investments. As of March 31, 2023, Lyons held 993,895 shares of Edgio common stock. If Lyons admitted that he, Edgio, or others engaged in misconduct, his investment in Edgio would be substantially devalued. Further, if Lyons acknowledged that executives at Edgio had engaged in the wrongdoing alleged, he would be acknowledging that he, as CEO of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

164.     Defendant Lyons is named as a defendant in the pending Securities Class Action. As such, he is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

165.    Lyons authorized and signed the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefore.

166.    Lyons benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing his re-election to the Edgio Board through the false and misleading statements and material omissions in the 2022 Proxy Statement.

167.    Lyons has a pre-existing business relationship with Defendant Rayman. They acted as the critical negotiators during the transaction between Limelight and Edgecast, having directly negotiated multiple terms of the Edgecast transaction, including the material price terms of the transaction, the triggering events and duration of the earnout shares to be paid to College Parent if a deal was reached, Apollo's offer to invest $30 million of primary equity capital into the combined company, the addition of Rayman and Wang to the Edgio Board post-acquisition, and potential adjustments to the pricing and other terms of the transaction as a result of the surprise of Edgecast's 4Q2021 financial results (which were lower than expected). Moreover, Apollo and College Parent, which designated Rayman and Wang as Edgio Board members, are majority shareholders of Edgio and essentially control Lyons' compensation.

168.    Lyons will not investigate and take action against those responsible for the wrongdoing pled herein because doing so would harm him and his investments. As of March 31, 2022, Lyons held 993,895 shares of Edgio common stock. If Lyons admitted that he, Edgio, or others engaged in misconduct, his investment in Edgio would be substantially devalued. Further, if Lyons acknowledged that executives at Edgio engaged in the wrongdoing alleged, he would be acknowledging that he, as a director and CEO of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

169.    Lyons, as a director of Edgio, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Edgio's core operations and making truthful, accurate, and complete statements to investors; (2) effectively oversee the material risks facing the Company; and (3) implement and maintain an internal control system of financial reporting sufficient to accurately reflect the Company's financial condition and operations and to detect and remediate any violation of the laws, rules, and regulations governing financial reporting, and to monitor those internal control systems for compliance. Had Lyons taken timely action, the damage caused to Edgio could have been prevented or minimized.

170.    Lyons is neither disinterested nor independent. Any demand upon Defendant Lyons is futile and, thus, excused.

**H.      Demand Upon Defendant Peterschmidt Is Excused**

171.    Peterschmidt is an Edgio director since 2007, Chairman of its Board since April 2021, member of its Audit Committee and of its Compensation Committee.

172.    Peterschmidt earns compensation in excess of the compensation that directors earn at equivalently sized companies. As of March 31, 2022, Peterschmidt received $202,490 compensation in the form of fees and stock option awards for his service as a director in 2022. According to FW Cook's 2022 Director Compensation Report, the median director compensation per year at a small cap company like Edgio is $120,000, so Peterschmidt received 66% more than the compensation of a director at a comparably capitalized company. If Peterschmidt acknowledged that he, Edgio, or others engaged in misconduct, his lucrative position would be jeopardized.

173. He will not investigate and take action against those responsible for the wrongdoing pled herein because doing so would harm him and his investments. As of March 31, 2022, Peterschmidt held 128,259 shares of Edgio common stock and received $202,490 compensation in the form of fees and stock option awards for his service as a director in 2022. If Peterschmidt admitted that he, Edgio, or others engaged in misconduct, his investment in Edgio would be substantially devalued and his lucrative position jeopardized. Further, if Peterschmidt acknowledged that executives at Edgio had engaged in the wrongdoing alleged, he would be acknowledging that he, as a major investor with long-term involvement in the Company, either knew of the wrongdoing or should have known of the wrongdoing.

174. Peterschmidt authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefore.

175. Peterschmidt benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing his re-election to the Edgio Board through the false and misleading statements and material omissions in the 2022 Proxy Statement.

176. Peterschmidt, as a director of Edgio, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Edgio's core operations and making truthful, accurate, and complete statements to investors; (2) effectively oversee the material risks facing the Company; and (3) implement and maintain an internal control system of financial reporting sufficient to accurately reflect the Company's financial condition and operations and to detect and remediate any violation of the laws, rules, and regulations governing financial reporting, and

to monitor those internal control systems for compliance. Had Peterschmidt taken timely action, the damage caused to Edgio could have been prevented or minimized.

177. As a member of the Audit Committee, Peterschmidt had duties regarding oversight of the accounting and financial reporting processes of the Company and audits of the financial statements of the Company. Peterschmidt utterly failed to perform these essential duties.

178. As a member of Edgio's Compensation Committee, Peterschmidt had the duty to assist the Board in fulfilling its responsibilities relating to the fair and appropriate compensation of executives and directors. Amaral utterly failed to perform these essential duties.

179. Peterschmidt is neither disinterested nor independent. Any demand upon Defendant Peterschmidt is futile and, thus, excused.

## I. Demand Upon Defendant Rayman Is Excused

180. Defendant Rayman is an Edgio director and member of its Nominating and Governance Committee since June 2022, when Edgio acquired Edgecast and related businesses and assets from College Parent. College Parent is the beneficial shareholder of 37% of Edgio common stock. In turn, College Parent is 90% owned by Apollo, where Rayman is a partner and has worked since 2010. Upon the acquisition of Edgecast, College Parent appointed Rayman to Edgio's Board in accordance with the Stockholders Agreement between College Parent and the Company whereby College Parent may designate one director for each class of Edgio director.

181. Rayman has a pre-existing business relationship with Defendant Lyons. They acted as the critical negotiators during the transaction between Limelight and Edgecast, having directly negotiated multiple terms of the Edgecast transaction, including the material price terms of the transaction, the triggering events and duration of the earnout shares to be paid to College

Parent if a deal was reached, Apollo's offer to invest $30 million of primary equity capital into the combined company, the addition of Rayman and Wang to the Edgio Board post-acquisition, and potential adjustments to the pricing and other terms of the transaction as a result of the surprise of Edgecast's 4Q2021 financial results (which were lower than expected). Moreover, Apollo and College Parent, which designated Rayman and Wang as Edgio Board members, are substantial shareholders of Edgio.

182.     Rayman will not investigate and take action against those responsible for the wrongdoing pled herein because doing so would harm him and his investments. As of March 31, 2022, Rayman personally held 2,258 shares of Edgio common stock. More significantly, College Parent, a significant subsidiary of Apollo and the party that installed Rayman as an Edgio director, is a controlling 37% shareholder of Edgio. If Rayman admitted that he, Edgio, or others engaged in misconduct, his investment in Edgio would be substantially devalued. Further, if Rayman acknowledged that executives at Edgio engaged in the wrongdoing alleged, he would be acknowledging that he, as a director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

183.     Rayman also has long-standing prior business and intertwining relationships with Defendant Wang. Both are affiliated with Apollo since at least 2017, focusing on private equity investing across various sectors together, including Internet/media investing. Both were appointed Edgio directors in June 2022 by College Parent, an Apollo majority owned subsidiary, in accordance with the Stockholders Agreement between College Parent and the Company whereby College Parent may designate one director for each class of Edgio director as a result of the acquisition of Edgecast from College Parent, the largest and controlling shareholder of Edgio. Both are directors of Yahoo as appointees of Apollo.

184.    Furthermore, Rayman, as a director of Edgio, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Edgio's core operations and making truthful, accurate, and complete statements to investors; (2) effectively oversee the material risks facing the Company; and (3) implement and maintain an internal control system of financial reporting sufficient to accurately reflect the Company's financial condition and operations and to detect and remediate any violation of the laws, rules, and regulations governing financial reporting, and to monitor those internal control systems for compliance. Had Rayman taken timely action, the damage caused to Edgio could have been prevented or minimized.

185.    As a member of the Nominating and Governance Committee, Rayman had the duty, among others, to ensure the implementation and effectiveness of Edgio's Corporate Governance Guidelines. Rayman utterly failed to perform these duties.

186.    Rayman is neither disinterested nor independent. Any demand upon Defendant Rayman is futile and, thus, excused.

**J.    Demand Upon Defendant Wang Is Excused**

187.    Wang is an Edgio director and member of its Nominating and Governance Committee since June 2022, when Edgio acquired Edgecast and certain Edgecast-related businesses and assets from College Parent. He and Rayman were appointed by College Parent in accordance with the Stockholders Agreement between College Parent and the Company whereby College Parent may designate one director for each class of Edgio director. College Parent is the beneficial shareholder of 37% of Edgio common stock. In turn, College Parent is 90% owned by Apollo, where Wang is an associate since 2017. He is also on the board of Yahoo, another Apollo subsidiary, together with Rayman.

188.    Defendant Wang will not investigate and take action against those responsible for the wrongdoing pled herein because doing so would harm Rayman and Apollo. College Parent, a significant subsidiary of Apollo and the party that installed Wang as an Edgio director at the behest of Rayman, is a controlling 37% shareholder of Edgio. If Wang admitted that he, Edgio, or others engaged in misconduct, Rayman and Apollo's direct and indirect investments in Edgio would be substantially devalued. Further, if Wang acknowledged that executives at Edgio engaged in the wrongdoing alleged, he would be acknowledging that he and Rayman, as directors of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

189.    Wang also has long-standing prior business and intertwining relationships with Defendant Rayman. Both are affiliated with Apollo since at least 2017, focusing on private equity investing across various sectors together, including Internet/media investing. Both were appointed Edgio directors in June 2022 by College Parent, an Apollo majority owned subsidiary, in accordance with the Stockholders Agreement between College Parent and the Company whereby College Parent may designate one director for each class of Edgio director as a result of the acquisition of Edgecast from College Parent, the largest shareholder of Edgio. Both are directors of Yahoo as appointees of Apollo. Rayman also negotiated the addition of Wang and himself to the Board of Edgio with Lyons prior to the acquisition of Edgecast and seemingly arranged for the payment of their fees as directors to be paid to College Top, a direct wholly owned subsidiary of College Parent.

190.    Wang, as a director of Edgio, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Edgio's core operations and making truthful, accurate, and complete statements to investors; (2) effectively oversee the material risks facing the

Company; and (3) implement and maintain an internal control system of financial reporting sufficient to accurately reflect the Company's financial condition and operations and to detect and remediate any violation of the laws, rules, and regulations governing financial reporting, and to monitor those internal control systems for compliance. Had Wang taken timely action, the damage caused to Edgio could have been prevented or minimized.

191.    Wang as a member of the Nominating and Governance Committee, had the duty, among others, to ensure the implementation and effectiveness of Edgio's Corporate Governance Guidelines. Wang utterly failed to perform these duties.

192.    Wang is neither disinterested nor independent. Any demand upon Defendant Wang is futile and, thus, excused.

### K.    Other Factors Demonstrating That Demand Upon The Individual Defendants Is Excused

193.    Edgio has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Board has not caused the Company to take action to recover for the Company the damages it has suffered and will continue to suffer thereby.

194.    The members of the Board received, and continue to receive, substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board. They have thus benefited from the wrongs herein alleged and have engaged therein to preserve their positions of control and the perquisites thereof and are incapable of exercising independent objective judgment in deciding whether to bring this action.

195.    Publicly traded companies, such as Edgio, typically carry director & officer liability insurance from which the Company could potentially recover some or all its losses. However, such insurance typically contains an "insured vs. insured" disclaimer that will

foreclose a recovery from the insurers if the Individual Defendants sue each other to recover Edgio's damages.

## VII. CLAIMS FOR RELIEF

### COUNT ONE
**Against the Individual Defendants for**
**Violations of Section 14(a) of the Exchange Act**

196. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

197. The Section 14(a) claim alleged herein is based solely on negligence. It is not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. The Section 14(a) claim alleged herein does not allege and does not sound in fraud. Plaintiff specifically disclaims any allegations of reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to those non-fraud claims.

198. Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

199. Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

200.    The 2022 Proxy Statement was materially false and misleading because the Individual Defendants were required, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Edgio's core operations and making truthful, accurate, and complete statements to investors; (2) effectively oversee the material risks facing the Company; and (3) implement and maintain an internal control system of financial reporting sufficient to accurately reflect the Company's financial condition and operations and to detect and remediate any violation of the laws, rules, and regulations governing financial reporting, and to monitor those internal control systems for compliance.

201.    The misleading information contained in the 2022 Proxy Statement was material to Edgio's shareholders in determining whether to approve each matter for which their election was sought.

202.    The material misstatements and omissions in the 2022 Proxy Statement damaged the Company.

203.    Plaintiff, on behalf of Edgio, seeks relief for damages inflicted upon the Company based on the misleading 2022 Proxy Statement in connection with the improper re-election of Lyons and Peterschmidt to the Board, approval of the issuance of new Limelight shares to College Parent in connection with the purchase of Edgecast, and ratification of EY as the Edgio independent registered public accounting firm.

## <u>COUNT TWO</u>
### Against the Individual Defendants for
### Breach of Fiduciary Duties

204.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

205.     The Individual Defendants owed and owe fiduciary duties to Edgio. By reason of their fiduciary relationships, the Individual Defendants specifically owed and owe Edgio the highest obligation of good faith and loyalty in the administration of Edgio's affairs, including assuring that Edgio complied with state and federal laws governing, among other things, the making of truthful, complete, and accurate public statements regarding the Company's financial condition and business prospects. The Board also had specific duties as defined by the Company's corporate governance documents and principles that, had they been discharged in accordance with the Board's obligations, would have prevented the misconduct and consequential harm to Edgio alleged herein.

206.     The Individual Defendants ignored their duties. The Individual Defendants failed to make a good faith effort to correct the problems or prevent their occurrence.

207.     The Individual Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties regarding prudently managing the business of Edgio in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, the Individual Defendants breached their duties of good faith and loyalty in the management and administration of Edgio's affairs and in the use and preservation of Edgio's assets.

208.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Edgio has sustained significant damages, not only monetarily, but also to its corporate image and goodwill. Such damages include, among other things, the costs of defending and resolving the pending securities class action lawsuit.

209.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

## COUNT THREE
### Against the Individual Defendants for Contribution
### for Violations of 21D of the Exchange Act

210.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

211.    The conduct of the Individual Defendants, as described herein, has exposed the Company to significant liability under various federal securities laws by their misconduct.

212.     The Company is named as a defendant in related securities class action lawsuits that allege and assert claims arising under the federal securities laws. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If Edgio is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Individual Defendants as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. The Company is entitled to contribution and indemnification from the Individual Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

213.    As officers and directors, the Individual Defendants had the power or ability to, and did, control or influence, either directly or indirectly, Edgio's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

214.    The Individual Defendants are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

215.    The Individual Defendants have damaged the Company and are liable to the Company for contribution.

**COUNT FOUR**
**Against the Individual Defendants**
**for Aiding and Abetting**

216.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

217.    Each of the Individual Defendants has acted and is acting with knowledge of or with reckless, or grossly negligent, disregard to the fact that the Individual Defendants are in breach of their duties to the Company and have participated in such breaches of duties.

218.    In committing the wrongful acts, each of the Individual Defendants has pursued or joined in the pursuit of a common course of conduct. They have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided and abetted, and/or assisted, each other in breaching their respective duties.

219.    Because the actions described herein occurred under the Board's supervision and authority, each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

220.    Each of the Individual Defendants aided and abetted each other and rendered substantial assistance in the wrongs complained of herein.

**VIII.   PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Declaring that Plaintiff may maintain this action on behalf of Edgio and that Plaintiff is an adequate representative of the Company;

(b)     Declaring that the Individual Defendants violated Section 14(a) of the Exchange Act;

(c)     Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Edgio;

(e)     Directing the Company to take all necessary actions to reform and improve its internal controls and Board oversight;

(f)     Determining and awarding to Edgio the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(g)     Ordering disgorgement of profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties;

(h)     Awarding Edgio restitution from the Individual Defendants, and each of them;

(i)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(j)     Granting such other and further relief as the Court may deem just and proper.

## IX.   JURY DEMAND

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

DATED: August 23, 2023                    Respectfully submitted,

**WEISS LAW**

*/s/ Mark D. Smilow*
David C. Katz
Mark D. Smilow
Joshua M. Rubin
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: dkatz@weisslawllp.com
        msmilow@weisslawllp.com
        jrubin@weisslawllp.com

*Attorneys for Joel Rosenfeld*